Filed 1/23/14  In re M.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.P., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E057504 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1201008) |
| v. | OPINION |
| M.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Matthew I. Thue, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

Defendant and appellant M.G. (Father) appeals from the juvenile court's jurisdictional and dispositional findings as to his 11-year-old son M.P. (the child). He contends that (1) there was insufficient evidence to support the juvenile court's order sustaining the petition under Welfare and Institutions Code section 300, subdivision (b); and (2) the court erred in removing the child from his custody. We reject these contentions and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

When the matter came to the attention of the Riverside County Department of Public Social Services (DPSS), the child was being cared for by his maternal grandmother S.P. (grandmother). S.P. (Mother) was in an inpatient substance abuse program.[1] Father did not have stable housing but had secured an order for weekend visits with his child, and was in the process of securing custody rights. The child had lived with the grandmother most of his life. However, the grandmother was not the child's legal guardian.[2]

On August 9, 2012, DPSS received a referral alleging general neglect of the child when he visits his father every weekend. The reporting party was concerned about the environments Father subjected the child to, such as where there was a lot of drinking,

_____

[1] Neither the maternal grandmother nor Mother is a party to this appeal.

[2] At a review hearing, the juvenile court found that the grandmother had custody of the child pursuant to a temporary family law court order, and was not entitled to standing in the juvenile court proceeding.

fighting, and lack of food, and how it had affected the child. The reporting party noted that there had been a noticeable change in the child since June 2012; that the child had a bald spot on the top of his head; and that the child was stressed when he was with his father. The reporting party also stated that Father at times did not supervise the child; that Father was unemployed and undocumented; and that Father had left the child alone when he believed Immigration and Naturalization Services (INS) was looking for him. The reporting party further asserted that the child had stated that he was afraid when he goes on visits with Father and that the child's behavior changes after the visits, at times, becoming aggressive. The child had been in counseling for the last three to four months and had recently begun "'acting up.'"

The grandmother reported that Father began weekend visits with the child on May 17, 2012, and since then the child had ended up in the hospital "'every weekend.'" Specifically, she asserted that Matthew was taken to a hospital via ambulance after suffering heat exhaustion at an air show. On other occasions, the child fell in a pothole and hurt his leg while at Father's relative's house; and at another relative's home, the child tripped over a bike tire due to it being dark and was taken to a hospital. An X-ray showed that the child had a torn muscle and a sprain, resulting in a leg brace and crutches for the child. And on August 10, 2012, the child had hernia surgery.

The child reported that Father failed to throw him a birthday party as promised and instead took him to a restaurant and left him unattended while he went to the bathroom and spoke on his cellular telephone. The child also stated that Father took him to Father's half brother's house where there was a lot of screaming and yelling. The child

3

further asserted that he is verbally harassed and called derogatory names by paternal relatives; that they talk about the court case when they are not supposed to; and that they smoke cigarettes around him even though he has asthma. The child feels that his father does not spend time with him and does not watch him. He is afraid he will get hurt and be left alone. He further noted that his father drives with him in the car even though Father does not have a driver's license. The child denied seeing drug use or being inappropriately touched while visiting Father.

On August 24, 2012, the social worker spoke with the reporting party. The reporting party did not believe Father is a "bad father," but was concerned about the environment Father subjected the child to. The reporting party was unsure whether the child's hair loss was due to stress or a medical condition.

On August 31, 2012, another referral was received by DPSS alleging general neglect and physical abuse of the child. The child reported that Father had hit him with an open hand on his back and yelled and cursed at him because he did not want to go to a paternal cousin's home. The child stated that he was afraid of Father and that Father almost went off the road while driving. The child does not like to go to the paternal cousin's home because they yell at him and he had seen a cousin exhibit signs of drug use.

On September 4, 2012, a third referral was received by DPSS alleging physical and sexual abuse of the child. When the child was taken for medical treatment for his hair loss and eczema, he reported that the hair loss was due to abuse when he visited Father. He stated that Father had verbally and physically abused him and that Father had

4

fondled him while he showered with him.  The child further stated that Father had touched him on his private parts about 16 times, beginning when he was seven years old, and that Father had taken pictures of him while he was going to the bathroom.  He was not sure if Father touched him on purpose though.  The child also noted that the grandmother had not allowed him to see his father in the past four weeks.

Father explained to the social worker that the grandmother is "'putting things in [the child's] head,'" and making the child his "enemy."  He also stated that the allegations against him are false.  He further reported that he loves his son and wants him; that there is no fighting around the child when he takes him to his relative's homes; that he stays with his brother on weekends to ensure the child had a safe and comfortable environment; and that the child always had food to eat.  Father admitted that the child had passed out due to heat exhaustion and explained that the child was in a hurry to get to the air show and he therefore did not stop to get bottles of water.  He also admitted to not having a driver's license and driving the child in the car to a McDonald's, Lake Perris, and the air show.

Mother had a history of abusing drugs and had been in a drug rehabilitation center since February 2012.  She last saw the child on August 12, 2012, and was concerned about the child's mental health.

On September 26, 2012, the social worker was informed that the family law judge ordered the child be removed from the grandmother and Father.  The family law judge stated that it appeared the grandmother was alienating the child from Father.  The

grandmother was upset by the order and denied coaching the child or denying Father from seeing the child.

On September 28, 2012, a petition was filed on behalf of the child pursuant to Welfare and Institutions Code[3] section 300, subdivisions (b) (failure to protect), (d) (sexual abuse), and (g) (no provision for support). Specifically, the petition alleged that Father had inappropriately touched the child on his private parts and taken pictures of him while he used the bathroom (allegations b-1 and d-1); that Father administered inappropriate discipline, including but not limited to hitting the child on his back with an open hand (allegation b-2); that Father demonstrated a limited ability to provide a safe environment for the child, such as driving with the child without a license (allegation b-3); that Mother had a history of abusing controlled substances (allegation b-4); and that Mother was unable to provide care and support for the child (allegation g-1).

At the October 1, 2012 detention hearing, the child was formally removed from his parents. The court ordered the child remain in the grandmother's home based on various conditions.

Law enforcement investigated the sexual and physical abuse allegations made against Father and found the evidence insufficient to take the matter further.

The child was a friendly and energetic child. He appeared comfortable living with his grandmother and older half brother, and informed the social worker that he wanted to

---

[3] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

6

remain placed with his grandmother. He wanted to have visits with his parents. He eventually wanted to live with his mother once she got better. The child suffered from an auto-immune disorder, and was scheduled to have an MRI on his left leg to determine whether he had cancer.

The social worker recommended that the child remain in the grandmother's care, since it was the only home the child knew. The social worker noted that although it appeared the grandmother may have been alienating the child from his parents, her home was stable and she met the child's education, physical, and medical needs. The grandmother agreed to participate in services.

The contested jurisdictional/dispositional hearing was held on October 30, 2012. Father, Mother, the grandmother, and the child were present. At that time, the court heard from the child in chambers regarding his wishes for visitations with his parents. Following brief arguments from counsel, the juvenile court found allegations b-3, b-4, and g-1 true as alleged in the petition; and not true allegations b-1, b-2, and d-1. The only allegation found true against Father was the allegation that Father had demonstrated a limited ability to provide a safe environment for the child, such as driving with the child without a license. The child was declared a dependent of the court and removed from his parents' care. The child was to remain with the grandmother on an extended visit. The parents were provided with reunification services and ordered to participate in their court-approved case plans. Father was also provided with unsupervised day visits. This appeal followed.

II

DISCUSSION

Father challenges the jurisdictional findings and dispositional orders, arguing that there is insufficient evidence to support the juvenile court's jurisdiction under subdivision (b) of section 300 as to both parents and that there was insufficient evidence to support the removal order. As explained *post*, we conclude that his challenges fail.

A.    *Jurisdiction*

The petitioner in a dependency proceeding must prove by a preponderance of evidence that the child who is the subject of the petition comes under the juvenile court's jurisdiction. (*In re Shelley J.* (1998) 68 Cal.App.4th 322, 329, superseded by statute as stated in *In re Christopher C.* (2010) 182 Cal.App.4th 73.) We review jurisdictional findings under the substantial evidence standard. (*In re E.B.* (2010) 184 Cal.App.4th 568, 574; *In re A.S.* (2011) 202 Cal.App.4th 237, 244.) Under this standard, we determine whether there is any substantial evidence, contradicted or uncontradicted, which supports the conclusion of the trier of fact. (*In re Tracy Z.* (1987) 195 Cal.App.3d 107, 113.) All evidentiary conflicts are resolved in favor of the respondent, and where more than one inference can reasonably be deduced from the facts, we cannot substitute our own deductions for those of the trier of fact. (*In re John V.* (1992) 5 Cal.App.4th 1201, 1212.)

We begin with Father's contention that the juvenile court lacked jurisdiction over the child because there was insufficient evidence to support the jurisdictional findings as to him. He further claims that because Mother was a noncustodial parent, the sustained

8

allegations against Mother did not support the court's jurisdiction over the child. Father refers to the grandmother as the child's guardian and case law regarding guardianship to support his position.

Generally, to acquire jurisdiction under subdivision (b) of section 300, the juvenile court was obliged to find that the child "has suffered, or there is a substantial risk that [he] will suffer, serious physical harm or illness, as a result" of specified forms of parental neglect, including substance abuse, physical abuse, and failure to protect the child. Here, the juvenile court made findings against Father and Mother, namely, that the child was placed at a substantial risk of harm by Father's conduct of driving with the child without a valid driver's license and Mother's substance abuse and inability to provide support. Father argues that there was insufficient evidence to support the findings. For the reasons explained *post*, Father's attack on the juvenile court's jurisdiction fails in view of substantial evidence of the allegations against Mother. Indeed, it was undisputed that Mother had a history of abusing drugs and that she was residing in a rehabilitation center and was unable to provide support and care for her child.

To secure jurisdiction over the child under section 300, the juvenile court was not obliged to make jurisdictional findings against both Father and Mother. Because the focus of the statutory scheme governing dependency is the protection of children, "a minor is a dependent if the actions of *either parent* bring [him] within one of the statutory definitions of a dependent." (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397, italics added.) The agency "is not required to prove two petitions, one against the mother and

9

one against the father, in order for the court to properly sustain a petition [pursuant to § 300] or adjudicate a dependency." (*In re La Shonda B.* (1979) 95 Cal.App.3d 593, 599.) "A petition is brought on behalf of the child, not to punish the parents. [Citation.] The interests of both parent and child are protected by the two-step process of a dependency proceeding, with its separate adjudication and disposition hearings. Thus, when DPSS makes a prima facie case under section 300 by proving the jurisdictional facts at the adjudication hearing, it is not improper for the court to sustain the petition; not until the disposition hearing does the court determine whether the minor should be adjudged a dependent." (*Ibid*.; see also *In re X.S.* (2010) 190 Cal.App.4th 1154, 1161.)

Here, there is more than substantial evidence to support jurisdiction of the child based on Mother's conduct alone, and Father does not dispute the allegations against Mother. Accordingly, because Father does not challenge the sufficiency of the evidence to support the jurisdictional allegations as to Mother, the juvenile court properly exercised jurisdiction over the child even if Father's conduct was not an independent basis for jurisdiction. (See, e.g., *In re Maria R.* (2010) 185 Cal.App.4th 48, 60 disapproved on another ground in *In re I.J.* (2013) 56 Cal.4th 766, 780-781; *In re Jeffrey P.* (1990) 218 Cal.App.3d 1548, 1553-1554; *In re John S.* (2001) 88 Cal.App.4th 1140, 1143.)

Although Father does not challenge the jurisdictional findings based on Mother's conduct, relying on guardianship case law, he asserts that because the grandmother shared custody of the child, the section 300 evaluation should have focused on the grandmother and Father's ability to safely care for the child. We reject this contention.

Father's reliance on guardianship case law does not support his position, because the grandmother was not the child's legal guardian. The grandmother never obtained guardianship over the child. The juvenile court found that the grandmother had custody of the child pursuant to a temporary family law order and was not entitled to an attorney or to have standing in the juvenile court proceedings. As such, we reject Father's request to remand the matter with instructions to have DPSS investigate whether section 300 allegations should be made against the grandmother.

Father also argues that even if jurisdiction over the child is established based on the allegations against Mother, the unsupported allegations against Father should nonetheless be reversed because the finding will affect future proceedings. This contention was rejected by the court in *In re I.A.* (2011) 201 Cal.App.4th 1484. In that case, the jurisdictional allegations included mother's drug abuse, domestic violence between the parents, and the parents' criminal histories. (*Id*. at p. 1488.) The father there also challenged the jurisdictional findings based on his conduct, but not the findings based on the mother's conduct. The court dismissed the appeal as moot because the father's "contentions, even if accepted, would not justify a reversal of the court's jurisdiction." (*Id*. at pp. 1487-1488.) The court explained: "[I]t is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.] Once the child is found to be endangered in the manner described by one of the subdivisions of section 300—e.g., a risk of serious physical harm (subds. (a) & (b)), serious emotional damage (subd. (c)), sexual or other abuse (subds. (d) & (e)), or abandonment (subd. (g)), among others—the

11

child comes within the court's jurisdiction, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred. [Citation.] For jurisdictional purposes, it is irrelevant which parent created those circumstances." (*Id.* at pp. 1491-1492.)

As DPSS established jurisdiction based on Mother's conduct, the juvenile court properly found that the child came within the jurisdiction of section 300, subdivisions (b) and (g). (*In re I.A.*, *supra*, 201 Cal.App.4th at pp. 1491-1492.)

In any event, there was substantial evidence to support the juvenile court's jurisdictional finding under section 300, subdivision (b), as to Father. Substantial evidence showed that the child was at substantial risk of harm due to Father's conduct of driving the child on several occasions without a valid driver's license. Father admitted to not having a driver's license and admitted to driving the child in his car to McDonald's, Lake Perris, and the air show. Father knew that he was not supposed to be driving the child because he did not have a license and the car was uninsured; however, he drove the child in his car anyway. Additionally, the child reported that Father almost went off the road while driving the child in the car, and that it scared the child. Although Father attack's the child's credibility, we remind Father that "'[i]ssues of fact and credibility are matters for the trial court alone.'" (*In re Shelley J.*, *supra*, 68 Cal.App.4th at p. 329.) Father's actions demonstrated a lack of judgment and a limited ability to provide a safe environment for the child and, thereby, placed the child at risk.

Father's reliance on *In re J.N.* (2010) 181 Cal.App.4th 1010 to support his position is misplaced. The issue in *J.N.* was "whether evidence of a *single episode* of parental

12

conduct was sufficient to bring the three children within the juvenile court's jurisdiction." (*Id*. at p. 1022, italics added.) In *J.N.*, the father was involved in a car accident while driving under the influence of alcohol, with the children in the car. Both parents were intoxicated, and two of the three children were injured. The Court of Appeal concluded that a single episode of parental conduct was insufficient to bring the three children within the juvenile court's jurisdiction, finding that there was insufficient evidence to establish that the parents' conduct would recur. There was no evidence of an ongoing substance abuse problem on the part of either parent, and "both parents were remorseful, loving, and indicated that they were willing to learn from their mistakes." (*Id*. at p. 1026.)

Unlike in *In re J.N.*, the record here reflects more than one single incident. Father admitted to driving the child in his car on several occasions while not having a driver's license. The record also shows that Father recently almost went off the road (presumably to avoid border patrol) while driving the child in his car, which scared the child. Additionally, there was no evidence to suggest that Father's conduct would not recur. There is substantial evidence from which the juvenile court could infer that the child is at risk in Father's care.

### B.    *Dispositional Orders*

Father also contends the order removing the child from his custody was not supported by substantial evidence. DPSS argues that Father has waived his right to challenge the dispositional order on appeal as a result of his failure to object to removal below. Father responds that an appellate challenge to the sufficiency of the evidence

13

supporting a dispositional removal order is not forfeited even if not raised in the juvenile court.

As a general rule, "the contention that a judgment [or order] is not supported by substantial evidence . . . is an obvious exception to the rule" that "points not urged in the trial court cannot be raised on appeal." (*Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23, fn. 17; see also *In re R.V.* (2012) 208 Cal.App.4th 837, 848.) Therefore, a parent's mere failure to object to removal of his or her child at the dispositional hearing does not bar that parent from challenging the sufficiency of the evidence supporting the removal order on appeal.

Nevertheless, our independent research has uncovered case law that warrants a finding of waiver. For reasons that follow, we hold that Father is barred from challenging the sufficiency of the evidence supporting the juvenile court's dispositional order removing the child from his custody. Inasmuch as the juvenile court's dispositional order comports with the court-ordered case plan to which Father tacitly agreed in open court, he cannot now be heard to complain.

In *In re Richard K.* (1994) 25 Cal.App.4th 580, the social worker recommended in her dispositional report that the juvenile court remove the children from their mother's physical custody based upon a finding of substantial danger to their physical health. (*Id.* at p. 587.) At the dispositional hearing, counsel for the mother submitted the matter on the recommendation of the social worker. The court followed the social worker's recommendation and ordered the children's removal from their mother's custody. (*Id.* at p. 588.)

On appeal, the mother challenged the sufficiency of the evidence to support the juvenile court's removal order. The court concluded that when a parent at a dispositional hearing submits on the recommendation of the social worker, the parent's "submittal amount[s] to acquiescence" and precludes the parent from challenging the sufficiency of the evidence to support the dispositional order. (*In re Richard K.*, *supra*, 25 Cal.App.4th at p. 589.)

As the court in *Richard K.* explained, "In our view, the mother's 'submitting on the recommendation' recommended findings and orders, as distinguished from mere submission on the report itself. This is considerably more than permitting the court to decide an issue on a limited and uncontested record, as was the case in [*In re*] *Tommy E.* [(1992) 7 Cal.App.4th 1234.**4**] The mother's submittal on the recommendation dispels any challenge to and, in essence, endorses the court's issuance of the recommended findings and orders. [¶] In other words, the mother was not disputing that the court should adjudge her children dependents, order them removed from her custody and provide a reunification plan. If, as occurred in this case, the court in turn makes the

---

**4** In *In re Tommy E.*, *supra*, 7 Cal.App.4th 1234, the court held that a parent who agrees to allow the juvenile court to determine whether the allegations of the petition are true based solely upon a social worker's report does not waive his or her right to challenge the sufficiency of the evidence to support the trial court's jurisdictional finding. (*Id.* at pp. 1236-1239.) The court in *Richard K.* acknowledged that in the case of a parent's submission of the jurisdictional finding on the social worker's report, "the court must nevertheless weigh evidence, make appropriate evidentiary findings and apply relevant law to determine whether the case has been proved. [Citation.] In other words, the parent acquiesces as to the state of the evidence yet preserves the right to challenge it as insufficient to support a particular legal conclusion. [Citation.] Thus, the parent does not waive for appellate purposes his or her right to challenge the propriety of the court's orders." (*In re Richard K.*, *supra*, 25 Cal.App.4th at p. 589.)

recommended orders, the party who submits on the recommendation should not be heard to complain.  As a general rule, a party is precluded from urging on appeal any point not raised in the trial court.  Any other rule would permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware.  [Citation.]  Similarly, in this case, by submitting on the recommendation without introducing any evidence or offering any argument, the parent waived her right to contest the juvenile court's disposition since it coincided with the social worker's recommendation.  He who consents to an act is not wronged by it. [Citation.]"  (*In re Richard K.*, *supra*, 25 Cal.App.4th at pp. 589-590, fn. omitted.)

In the present matter, when the court was considering disposition issues after making its jurisdictional findings, Father's counsel informed the court the following:  "As to disposition, we're in agreement that my client should receive family reunification services and would like to see an increase in visitation, liberalized visitation to include overnights and weekends and placement when appropriate."  The social worker's report recommended that Father receive services and that the child remain placed with the grandmother.  Father did not ask the court to place the child in his custody.  Father's acquiescence in that recommendation constitutes a waiver of the right to challenge the sufficiency of the evidence to support the removal order under the rule that a parent who submits on the department's recommendation waives the right to contest the juvenile court's decision if it coincides with the social worker's recommendation.  (*Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 813, citing *In re Richard K.*, *supra*, 25 Cal.App.4th at p. 590; see also *In re Kevin S.* (1996) 41 Cal.App.4th 882, 886.)

16

In any event, Father waived the right to challenge the court's placement order under the doctrine of invited error. When a party's own conduct induces the commission of an alleged error, the party is estopped under the doctrine of invited error from asserting the alleged error as a ground for reversal. Similarly, a party waives the right to attack error by expressly or impliedly agreeing or acquiescing at trial to the ruling or procedure challenged on appeal. (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501.) By expressly agreeing to disposition in this case and impliedly agreeing the child remain in the grandmother's home, Father waived the right to challenge the dispositional order.

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

KING
J.

17